J-A15006-21

2021 PA Super 209

| | | |
|---|---|---|
| TAMEKA GREEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE TRUSTEE OF THE UNIVERSITY | : | |
| OF PENNSTYVANIA D/B/A PENN | : | |
| MEDICINE AND PENN PRESBYTERIAN | : | No. 2160 EDA 2020 |
| MEDICAL CENTER, LEONARD E. | : | |
| ROSENFELD & ASSOCIATES D/B/A | : | |
| ROSENFELD AND MARON MEDICAL | : | |
| ASSOCIATES, AND DR. LEONARD | : | |
| ROSENFELD, D.O. | : | |
| | : | |
| | : | |
| APPEAL OF: JARED A. JACOBSON, | : | |
| ESQ. | : | |

Appeal from the Order Entered September 25, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170701368

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

OPINION BY BOWES, J.:                    **FILED OCTOBER 19, 2021**

Jared A. Jacobson, Esquire appeals from the September 25, 2020 order imposing monetary and injunctive sanctions against him pursuant to Pa.R.C.P. 1042.9, for violation of the certificate of merit requirement in professional liability actions set forth in Pa.R.C.P. 1042.3(a).  After careful review, we vacate the order and remand.

The following is a cautionary tale for attorneys who venture outside their area of expertise into unfamiliar specialized areas of litigation without educating themselves on the applicable rules and law.  On July 14, 2017,

Attorney Jacobson filed a complaint on behalf of Tameka Green sounding in both medical malpractice and intentional torts. Ms. Green alleged that Leonard Rosenfeld, D.O., an internist referred to her by employees or agents of the Trustee of the University of Pennsylvania d/b/a Penn Medicine and Penn Presbyterian Medical Center ("Penn Medicine"), hypnotized and sexually assaulted her. Ms. Green's claims against Dr. Rosenfeld and his professional corporation (collectively "Dr. Rosenfeld") sounded in medical negligence and lack of informed consent (the "medical malpractice claims"), and battery and intentional infliction of emotional distress (the "intentional tort claims"). Negligence claims against Penn Medicine were based upon theories of *respondeat superior* and ostensible agency.

Mr. Jacobson appended to the complaint one certificate of merit certifying that an appropriately licensed professional had supplied a written statement to him that there was "a reasonable probability that the care, skill, or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm." Certificate of Merit (quoting Pa.R.C.P. 1042.3(a)(1)). Dr. Rosenfeld and Penn Medicine moved to strike the certificate of merit on the ground that Pa.R.C.P. 1042.3 requires that a separate certificate be filed as to each defendant. Consequently, the trial court granted Mr. Jacobson leave to file the required certificates of merit.

Shortly after the close of the pleadings and discovery, Dr. Rosenfeld filed a motion for summary judgment alleging that without expert standard of care testimony, Ms. Green could not make out a *prima facie* medical malpractice case. Penn Medicine also moved for summary judgment echoing that the lack of expert testimony was fatal. Additionally, Penn Medicine decried the lack of proof of ostensible agency and argued that there was no recognized cause of action for negligent referral and no vicarious liability for intentional torts committed by Dr. Rosenfeld as a matter of law.

On October 3, 2019, the trial court granted Penn Medicine's motion for summary judgment, dismissing all claims with prejudice, but denied Dr. Rosenfeld's motion after concluding that there were genuine issues of material fact. At that time, the trial court outlined three options available to Ms. Green and advised counsel for Ms. Green to choose whether she would proceed on the medical malpractice claims, which required an expert report, or litigate the battery claim, or pursue the intentional infliction of emotional distress claim, neither of which required an expert report.[1] *See* Order, 10/16/19, at 1. By correspondence dated November 18, 2019, Mr. Jacobson advised the court that Ms. Green would pursue the medical malpractice claims, thus abandoning the intentional tort claims. In response, the trial court ordered

---

[1] We cannot fathom, and it is unclear from the record, why the trial court required Ms. Green to choose between prosecuting her medical malpractice claims and her intentional tort claims.

Ms. Green to present a proper expert report to opposing counsel and the court by January 12, 2020, a deadline that was later extended.

Ms. Green subsequently produced the expert report of David L. Fink, a psychiatrist. Dr. Fink opined, with a reasonable degree of medical certainty, that Dr. Rosenfeld's treatment fell below the standard of care when he decided to use relaxation techniques, and further, when he failed to obtain Ms. Green's informed consent before utilizing the techniques. Nonetheless, on March 5, 2020, Dr. Rosenfeld filed a second motion for summary judgment alleging that the standard of care opinion of a psychiatrist was inadmissible against a specialist in internal medicine, and hence, Ms. Green could not, as a matter of law, meet her evidentiary burden.

Instead of filing a response styled as a response in opposition to summary judgment, Mr. Jacobson filed a motion for extraordinary relief in which he alleged that Dr. Rosenfeld's conduct was within the knowledge of a layperson and no expert testimony was required. He also sought an extension of time and the opportunity to retain an expert in internal medicine. The trial court denied the motion and granted Dr. Rosenfeld's motion for summary judgment as "unopposed" on June 8, 2020. Ms. Green filed a motion for reconsideration, which the trial court denied. No appeal was taken from the order granting summary judgment. Hence, the underlying litigation was concluded.

On June 15, 2020, attorneys for Dr. Rosenfeld sent a request pursuant to Pa.R.C.P. 1042.9 to Attorney Jacobson for the written statement from a licensed professional upon which he relied in filing the certificate of merit against Dr. Rosenfeld.[2]  Mr. Jacobson did not respond.  Consequently, Dr. Rosenfeld filed a motion for sanctions.  *See* Pa.R.C.P. 1042.9(b) (providing in pertinent part that a "court may impose appropriate sanctions . . . if the court determines that an attorney violated Rule 1042.3(a)(1)" and that "such conduct was a cause in bringing about the harm").  Attorney Jacobson did not file a response to the motion for sanctions.  Hence, the trial court treated the motion as "unopposed," granted it, and imposed all the sanctions requested by Dr. Rosenfeld, inter alia, $84,459.29 in attorney fees and costs associated with defending the lawsuit and injunctive relief.  *See* Order, 9/25/20.

On October 19, 2020, Attorney Jacobson filed a motion for reconsideration asking the trial court to vacate and reconsider its order imposing sanctions.  In that filing, Mr. Jacobson offered the following explanation for his failure to file a timely response in opposition to the sanctions motion.  He averred that he was unaware that the motion for sanctions had been filed until after it had been granted.  He explained that his former administrative assistant had devised a system that automatically directed electronic notices of court filings to individual email folders for each

---

[2] Penn Medicine did not request a copy of the statement relied upon nor pursue sanctions against Mr. Jacobson.

case. When his administrative assistant worked for him, she monitored all emails and brought them to his attention. However, his assistant had left his employ and Mr. Jacobson acknowledged that he had difficulty navigating the system in the pandemic, along with a busy law practice and three children. Consequently, he did not consistently review every email folder. As more than thirty days had elapsed since the conclusion of Ms. Green's case when the motion for sanctions was filed, Mr. Jacobson did not review the email folder for this case and, hence, was unaware of the motion for sanctions.

Attorney Jacobson also appended to the motion his proposed response in opposition to the motion for sanctions. *See* Motion for Reconsideration, 10/19/20, at Exhibit F. He averred therein that any alleged violation of the certificate of merit requirement was not willful on his part. Furthermore, while he could not locate a written statement from the medical professional he consulted, he offered an affidavit from that physician attesting that she had orally advised him that Dr. Rosenfeld's conduct fell outside the standard of care for an internist. Moreover, since Mr. Jacobson also pled intentional tort claims on Ms. Green's behalf for which no certificate of merit was required, he maintained that not all attorney fees and costs incurred by counsel for Dr. Rosenfeld were causally related to the certificate of merit. Mr. Jacobson argued that the trial court should not have imposed fees incurred before the intentional tort claims were abandoned. In addition, Mr. Jacobson argued that Dr. Rosenfeld failed to establish that any increase in his insurance premiums

was due solely to the filing of the malpractice claims, not to the filing of the lawsuit itself, which included viable intentional tort claims. Absent such proof, Mr. Jacobson maintained that the increased premium had no causal nexus to the certificate of merit. Finally, Mr. Jacobson contended that the sanction ordering him to contact various media outlets, advise them that his client's lawsuit lacked merit, and request that they remove articles about the lawsuit from their websites was violative of his First Amendment right to free speech and his duty of loyalty to his client.

Dr. Rosenfeld filed a response to the motion for reconsideration. He maintained, *inter alia*, that since the medical malpractice claims were pursued from the inception of the case, he was entitled to sanctions in the form of attorney fees, costs, and expenses from the commencement of the litigation. He also argued that the injunctive relief directing Mr. Jacobson and Ms. Green "to notify all publications of the lack of merit of their claims and to request these publications be removed," was entirely appropriate.[3] Order, 9/25/20.

When the trial court did not immediately rule on Mr. Jacobson's motion for reconsideration, Mr. Jacobson filed a notice of appeal on October 23, 2020,

---

[3] Pa.R.A.P. 1042.9 authorizes sanctions against an attorney who violates Rule 1042.3(a)(1) and (2) by improperly filing a certificate of merit, but not the client.

to preserve his appellate rights.[4]  Three days later, the trial court denied the motion for reconsideration, stating that after reviewing the motion and the response thereto, the motion was "moot" as the case was on appeal.  Order, 10/26/20, at 1.

The trial court did not issue a Pa.R.A.P. 1925 order, but it filed an opinion on December 7, 2020.  Mr. Jacobson presents three issues for our review:

I.    Whether the trial court erred in sanctioning Mr. Jacobson as a threshold matter where the record did not evince bad faith or otherwise support a finding that sanctions should issue?

II.   Whether the extent of the trial court's sanctions (which amounted to $84,459.29) were excessive, unconscionable, and unsupportable, and otherwise legally improper given the nature of the alleged offense, the underlying facts and the trajectory of Plaintiff's case, and the limited (if any) connection between the sum of the sanctions awarded and the allegedly sanctionable conduct at issue?

III.  Whether the portion of the trial court's sanctions order which mandated that Mr. Jacobson contact "all websites/publications" to advise those outlets that the facts underlying his client's case were "not meritorious" and that the media outlets must "rescind[]" or otherwise "take[] down" news stories covering the underlying case, violated Appellant's First Amendment rights, his client's right to due process, and public policy and required Mr. Jacobson to violate his ethical obligation under the Pennsylvania Supreme Court's Rules of Professional Conduct?

Appellant's brief at 4-5.

_____

[4] **See** Pa.R.A.P. 1701(b)(3), which provides that the filing of a timely motion for reconsideration does not toll the running of the thirty-day appeal period. However, if the motion is granted before the expiration of the thirty-day appeal period, any appeal that has been filed will be held in abeyance.

Preliminarily, we must address Dr. Rosenfeld's claim that Mr. Jacobson waived all arguments regarding trial court error in granting sanctions pursuant to Pa.R.C.P. 1042.9 when he failed to respond to the motion for sanctions. He maintains that Mr. Jacobson had a duty to respond to the motion and cites ***Meyer-Chatfield Corp. v. Bank Fin. Servs. Group***, 143 A.3d 930, 939 (Pa.Super. 2016) for the proposition that Mr. Jacobson's failure to respond constituted a waiver of any arguments that could have been raised in opposition to the motion. He argues further that since Mr. Jacobson raised his arguments for the first time in a motion for reconsideration, he failed to present the arguments to the trial court, and hence, they are not preserved for appellate review under Pa.R.A.P. 302(a). ***See*** Appellee's brief at 3 (citing ***Stange v. Janssen Pharm., Inc.***, 179 A.3d 45, 63 (Pa.Super. 2018) *et al*).

Mr. Jacobson acknowledges that he did not respond to the motion for sanctions because he "failed to follow best practices regarding electronic court notices" and was unaware of its filing. Appellant's brief at 12. However, Mr. Jacobson contends that his proposed response to the motion for sanctions, which was appended to his motion for reconsideration, adequately identified the reasons why he objected to the sanctions to permit the trial court to address those issues in its opinion. Thus, he maintains that the purpose of requiring that issues first be presented to the trial court was fulfilled. Moreover, he contends that his challenge to the injunctive relief implicates inherent limitations on the trial court's power that cannot be waived. ***Id***. at

- 9 -

19-20 (citing **Dover v. Phila. Hous. Auth.**, 465 A.2d 644, 649 (Pa.Super. 1983). Finally, Mr. Jacobson reminds us that we may exercise our discretion under Pa.R.A.P. 105(a) "to disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction." Appellant's brief at 18.

We note preliminarily that the trial court did not find Mr. Jacobson's arguments waived. In fact, the trial court expressly stated in its order denying reconsideration that it had reviewed Mr. Jacobson's motion and the response thereto but denied it as "moot" because an appeal had been filed. The motion was not moot, and denial on that basis was incorrect.[5] Since the motion was presented to the trial court while the court still retained jurisdiction to rescind or modify its order, we find the arguments were raised in the trial court for purposes of Pa.R.A.P. 302(a). **See** 42 Pa.C.S. § 5505 (trial court has jurisdiction to modify or rescind a prior order for thirty days).

However, Dr. Rosenfeld cites numerous authorities for the proposition that an issue cannot be raised for the first time in a motion for reconsideration.

---

[5]. In **In re Gross**, 382 A.2d 116, 119 (Pa. 1978), the Supreme Court explained that the mootness doctrine requires that "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." (quoting *G. Gunther, Constitutional Law* 1578 (9th ed. 1975). Cases or issues present mootness problems when litigants who had standing to sue at the outset, and who may still have standing, no longer have any stake in the outcome due to intervening changes in the facts or law.

In our view, however, this was not a motion for reconsideration. Typically, a motion for reconsideration is filed by the losing party after litigating a motion or petition in which the party asks the court to reconsider its arguments. In that context, courts have repeatedly held that where a party proffers a new argument that could have been raised before in its motion for reconsideration, that argument will not be considered on appeal. In this instance, a motion for sanctions was filed to commence an ancillary proceeding, Mr. Jacobson did not file a response in opposition as he was unaware of the filing, and the court granted the motion as unopposed, thus concluding the proceeding. The motion for reconsideration was filed in an attempt to explain the default and persuade the trial court to vacate the order and allow him to file a response. The motion for reconsideration herein functioned much like a petition to open a default judgment and application to file a response *nunc pro tunc*.

As we acknowledged in **Hongwu Xu v. Lee**, 229 A.3d 333, (Pa.Super. 2020) (non-precedential decision), default judgments are not favored at law or in equity. Hence, we liberally apply equitable principles that favor allowing parties to defend causes of action on the merits in deciding whether to open a default judgment. A default judgment will be opened "if the moving party has (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a responsive pleading, and (3) pleaded a meritorious defense to the allegations contained in the complaint." **Digital Communs. Warehouse, Inc. v. Allen Invs., LLC**, 223

A.3d 278, 285 (Pa.Super. 2019) (quoting *Myers v. Wells Fargo Bank, N.A.*, 986 A.2d 171, 175-76 (Pa.Super. 2009)).

The test for permitting *nunc pro tunc* relief has similar elements. *Nunc pro tunc* relief may be granted when a litigant demonstrates that late filing was due to non-negligent circumstances on counsel's part, the document was filed shortly after the date it was due, and the other party was not prejudiced by the delay. *See Vietri ex rel. Vietri v. Delaware Valley High School*, 63 A.3d 1281, 1284 (Pa.Super. 2013). *Nunc pro tunc* relief has been granted to allow the late filing of a variety of pleadings and legal documents. *See e.g. Commonwealth v. Parrish*, 224 A.3d 682, 692 (Pa. 2020) (noting that in a civil case, "[u]pon application of the appellant and for good cause shown, an appellate court may remand . . . for the filing *nunc pro tunc* of a [Rule 1925(b)] Statement"); *Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001) (holding appeal *nunc pro tunc* permitted where late filing of notice of appeal was due to non-negligent circumstances related to appellant or counsel, notice was filed shortly after expiration date, and there was no prejudice to appellee); *Eathorne v. State Ethics Comm'n*, 960 A.2d 206, 211 (Pa.Cmwlth. 2008) (permitting untimely filing of answer *nunc pro tunc*).

As we find the motion for reconsideration in this case to be analogous to a petition to open a default judgment or an application for *nunc pro tunc* relief, we will treat it as such, rather than as a motion for reconsideration. It is the nature of the relief requested, not the styling of a motion, that controls.

*See e.g. City of Philadelphia v. Albert's Rest., Inc.*, 176 A.3d 367, 374 (Pa.Cmwlth. 2017) (holding motion for reconsideration can be treated as a post-trial motion where the relief requested is of the type contemplated in Pa.R.C.P. 227.1); *accord Bennett v. Rose*, 183 A.3d 498, 502 (Pa.Cmwlth. 2018) (holding landlord's motion for reconsideration functioned as a post-trial motion because it requested relief consistent therewith and reasoning that courts should be flexible). Thus, we find the arguments made therein and in the appended response in opposition preserved for appellate review.[6]

We turn now to the merits. We review a trial court's ruling on a motion for sanctions for an abuse of discretion. *See Dean v. Dean*, 98 A.3d 637, 644 (Pa.Super. 2014) (stating trial court has "significant discretion" in

---

[6] Mr. Jacobson filed the motion seeking relief just days after learning that the motion for sanctions had been filed and granted. He proffered a response in opposition to the motion for sanctions containing defenses to the motion. We see no discernible prejudice to Dr. Rosenfeld. As to whether Mr. Jacobson's lapse was "non-negligent," we note the following.

Mr. Jacobson provided a detailed explanation for his inadvertent failure to file a timely response in opposition to the sanctions motion. The motion for sanctions was filed at the height of a pandemic when attorneys and their support staffs worked remotely and communicated with the court and opposing counsel electronically. We appreciate that there may have been an inundation of emails, and that consequently, new systems were devised to manage them. The loss of staff, especially the administrative assistant familiar with the new system, would be a hardship to a small law practice. In these unique and difficult circumstances, Mr. Jacobson's failure to timely respond was more akin to counsel's oversight rather than negligence. *See Bass v. Commonwealth*, 401 A.2d 1133 (Pa. 1979) (finding appeal papers placed in folder of secretary's desk who became ill and left work was non-negligent failure to file timely appeal).

determining whether to impose sanctions pursuant to Pa.R.C.P. 1023.1). However, "[i]n performing an abuse of discretion review, when a trial court's application of the underlying law is called into question . . . it heightens [the] standard of review [to] *de novo*, and [the] scope of review is plenary as to the underlying question of law." **Sommers v. UPMC**, 185 A.3d 1065, 1071 (Pa.Super. 2018) (internal quotations marks omitted). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, or ill will." **Vietri***, supra*, at 1284.

At issue herein was whether Mr. Jacobson should be sanctioned for his alleged failure to comply with the certificate of merit requirement in a professional liability negligence action outlined in Pa.R.C.P. 1042.3(a)(1), (2), and (3):

(a)   In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1)   an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2)   the claim that the defendant deviated from an acceptable professional standard is based solely

> on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard,
>
> (3)  expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.C.P. 1042.3(a) (1-3). Mr. Jacobson certified pursuant to subsection (a)(1) that an appropriate medical professional had supplied a written statement to him that there was a reasonable probability that Dr. Rosenfeld's conduct fell outside acceptable standards and caused harm to Ms. Green. By choosing this option, Attorney Jacobson was implicitly acknowledging that expert testimony was required to make out a *prima facie* case.[7]

When a plaintiff has filed a certificate of merit as to a defendant and that defendant is subsequently dismissed from the case, the defendant may request in writing that the plaintiff provide him within thirty days with a copy of the written statement upon which he based the certificate of merit. Pa.R.C.P. 1042.9(a). If the request is not satisfied,

> (b) A court may impose appropriate sanctions, including sanctions provided for in Rule 1023.4, if the court determines that an attorney violated Rule 1042.3(a)(1) and (2) by improperly certifying that an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge experienced or exhibited in the

---

[7] Arguably, Mr. Jacobson could have filed a certificate of merit pursuant to subsection (a)(3), certifying that expert testimony from a licensed professional was unnecessary for prosecution of a medical malpractice case allegedly involving non-consensual sexual conduct by a physician upon a patient.

> treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

Pa.R.C.P. 1042.9(b). Hence, prior to imposing sanctions, Rule 1042.9(b) requires the trial court to determine whether there has been a violation, and if so, whether the improper certification "was a cause in bringing about the harm." If so, the court may impose "appropriate sanctions," such as the sanctions delineated in Rule 1023.4, which apply when attorneys sign documents certifying that the documents are not being presented for an improper purpose such as harassment, delay, or to increase litigation costs or raise claims or defenses that they warrant are proper under existing law, when in fact, they are baseless filings.

The conduct deemed sanctionable under Rule 1023.4, an attorney signing or certifying a document either falsely or for an improper purpose, is analogous to the conduct prohibited by the certificate of merit rules. As there is a dearth of authority governing sanctions under Rule 1042.9, we find helpful the Supreme Court's direction to look to the sanctions specified in Rule 1023.4 in fashioning sanctions under Rule 1042.9.

The Comment to Rule 1023.1 acknowledges that the trial court has "significant discretion" in determining what sanctions should be imposed for a violation, but "the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct." Pa.R.C.P. 1023.1 Comment. Rule 1023.4 permits a court to award attorney fees and expenses incurred in

presenting the motion for sanctions and, in the proper situation where deterrence is warranted, to order payment of "some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." Pa.R.C.P. 1023.4(a)(2)(iii). **See** Comment ("Any such award to the movant, however, should not exceed the expenses and attorney's fees for the services directly and unavoidably caused by the violation of the certification requirement."). Finally, Rule 1023.4 permits trial courts to impose sanctions of a "nonmonetary nature" when appropriate. Pa.R.C.P. 1023.4(a)(2)(i). For instance, the court may direct that "offensive litigation documents, or portions thereof, be stricken as a sanction for rules' violations, where appropriate." Pa.R.C.P. 1023.4(a)(2).

The comment to Rule 1023.1 provides a list of factors that a court may consider in determining whether sanctions are appropriate: "whether the improper conduct was willful or negligent; whether it was part of a pattern of activity or an isolated event; whether it infected the entire pleading or only one particular count or defense; whether the person has engaged in similar conduct in related litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount is needed to deter that person from

repetition in the same case; and what amount is needed to deter similar activity by other litigants."[8]

In this case, after Mr. Jacobson failed to produce the written statement from an appropriate medical professional upon which he purportedly relied in filing his certificate of merit, Dr. Rosenfeld filed a motion for sanctions pursuant to Pa.R.C.P. 1042.9. He requested that the court impose monetary sanctions consisting of (1) all attorney fees and costs incurred throughout the litigation, an amount in excess of $80,000; (2) attorney fees and costs associated with the motion for sanctions; and (3) the increase in premium for Dr. Rosenfield's professional liability insurance due to the lawsuit. In addition, Dr. Rosenfeld asked the trial court to order Mr. Jacobson to advise the media that the lawsuit lacked merit and request the various outlets to remove articles about the lawsuit.

The court granted the motion and imposed all the sanctions requested. In support of its order, the trial court offered the following: "The Unopposed Motion filed by the Rosenfeld Defendants is detailed, itemized and fully documents the harm caused by the conduct of attorney Jared A. Jacobson."

---

[8]  In *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1270 (Pa. 2009), our Supreme Court approved four factors that trial courts should consider when deciding whether to impose a sanction such as dismissal of the action for non-compliance with discovery and other pre-trial procedural rules: (1) the number, nature, and severity of the violations; (2) the defaulting party's willfulness or bad faith; (3) prejudice to the opposing party; and (4) the ability to cure the prejudice.

Trial Court Opinion, 12/7/20, at 3. Thus, while the trial court reviewed the motion and its attachments, there is no indication that it considered the factors outlined in the comment to Rule 1023.1 or contemplated whether the sanctions requested were causally related to the improper certificate of merit.

Admittedly, Mr. Jacobson did not file a response to the Rule 1042.9 motion for sanctions.[9] However, such a motion is not a pleading and the failure to file a response does not render the facts asserted therein admitted. **See** Pa.R.C.P. 1029(b) (only averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication).

In this instance, the trial court was charged with determining whether sanctions were warranted and, if so, imposing appropriate sanctions for the harm caused by the improper certificate of merit. The fact that the motion was "unopposed" did not relieve the trial court of its judicial duty to exercise its discretion, make the necessary findings, and explain its rationale for the decision. **See e.g. Carmen Enters. v. Murpenter, LLC**, 185 A.3d 380, 391 (Pa.Super. 2018) (fact that counsel acquiesced in an opponent's request for attorney fees was not dispositive of what the court could decide was fair and reasonable and did not relieve the court of its "judicial duty to decide the

---

[9] Where local rules require that a response be filed by any party opposing a motion governed by Pa.R.C.P. 208.3(b), the purpose of the response requirement is to indicate that opposition. **See** Pa.R.C.P. 208.3 Comment.

reasonableness and fairness of the fee request"). Here, the trial court treated the allegations in the motion for sanctions as facts deemed admitted and found them legally sufficient to support the sanctions requested. There is no indication that the trial court conducted any analysis of what harm was caused by Mr. Jacobson's conduct or whether or what sanctions were appropriate. In short, the trial court failed to exercise its discretion under Rule 1042.9, which is itself an abuse of discretion. **See Pittman v. Pa. Bd. of Prob. & Parole**, 159 A.3d 466, 478 (Pa. 2017) (holding that Board's failure to exercise statutory discretion is itself an abuse of discretion).

For these reasons, we vacate the order and remand for the trial court to determine whether Mr. Jacobson failed to comply with Pa.R.C.P. 1042.3.[10] In arriving at that decision, the court should consider the various factors set forth in the comment to Rule 1023.1. If the court should find that Mr. Jacobson violated Rule 1042.3, it must then decide whether that conduct was a cause in bringing about the harms alleged and what sanctions are appropriate. The trial court may hold a hearing or take such other action as it deems necessary to make its determination.

---

[10] Under the doctrine of substantial compliance, the trial court may "overlook any procedural defect that does not prejudice a party's rights." **Womer v. Hilliker**, 908 A.2d 269, 276 (Pa. 2006). In **Womer**, the plaintiff did not file a certificate of merit in a medical malpractice case. The High Court found that the fact that plaintiff provided the defendant with an expert report in discovery did not constitute substantial compliance with the certificate of merit requirement because he completely failed to attempt to comply with Pa.R.C.P. 1042.3.

Based on our review of the record, we offer the following observations. While the motion for sanctions was an exhaustive list of Attorney Jacobson's missteps in the litigation of this case, it is not clear from the motion that his failure to obtain and provide a written statement from a licensed medical provider for purposes of the certificate of merit was the cause of all the harm and damages Dr. Rosenfeld asserted. We note that the same facts that formed the basis of the medical negligence claims also supported the intentional tort claims of battery and intentional infliction of emotional distress. No certificate of merit was required for the latter claims. Since there could be no nexus between those intentional tort claims and the certificate of merit, the trial court should determine whether **all** attorney fees incurred from the inception of the lawsuit were causally related to the failure to obtain a written statement from a properly licensed medical professional. Specifically, the trial court should consider whether Dr. Rosenfeld has a colorable claim to the attorney fees and costs incurred prior to the abandonment of the intentional tort claims on or about November 18, 2019, as arguably those fees would have been incurred regardless of the medical malpractice claims.[11] A similar analysis should be undertaken to determine whether it was the filing

_____

[11] Arguably, Mr. Jacobson could have filed a certificate of merit to the effect that no expert opinion was required to establish that hypnotizing a patient and sexually molesting her was a violation of the standard of care for an internist.

of the lawsuit generally, or the medical malpractice claims specifically, that triggered an increase in Dr. Rosenfeld's insurance premium.

Furthermore, the trial court should articulate how an improperly supported certificate of merit was causally related to the media's reporting of the lawsuit. The articles relied upon by the trial court in granting the injunctive relief requested consisted largely of factual allegations quoted from the publicly available complaint. Dr. Rosenfeld's motion for sanctions and attached documentation fails to distinguish between attorney fees and damage to reputation flowing from media coverage of an allegedly unsupported medical malpractice case and viable intentional tort claims. Even assuming the trial court finds some causal connection between an improper certificate of merit and the press coverage the case received, the trial court should consider whether the injunctive relief sought by Dr. Rosenfeld is legally permissible and appropriate.

Finally, the fact that the medical negligence, informed consent, battery, and intentional infliction of emotional distress claims survived one motion for summary judgment would suggest that they were not meritless. Summary judgment was granted only after Mr. Jacobson abandoned the intentional tort claims in favor of exclusively pursuing the medical negligence claims but failed to obtain an expert report from a properly licensed professional.

For the foregoing reasons, we vacate the order and remand for the trial court to determine whether Mr. Jacobson's conduct warrants sanctions, and if

so, what harm was causally related to Mr. Jacobson's failure to possess a written statement from an appropriately licensed medical professional for purposes of the certificate of merit, and impose appropriate sanctions and the reasoning for its decision.

Order vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2021