J-A28031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| FURRUKH MUNAWAR AND AAIYSHA MUNAWAR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TOLL BROTHERS, INC, TOLL PA II, L.P., TOLL PA GP CORP, TOLL BROS., INC., TOLL ARCHITECTURE, INC., TOLL ARCHITECTURE I, P.A. | : | No. 173 EDA 2022 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDERSEN WINDOWS, INC., MACK-DONOHOE CONTRACTORS, INC., MILLENNIUM CONTRACTING CORPORATION | : | |
| | : | |
| | : | |
| APPEAL OF:  MARY P. HANSEN | : | |

Appeal from the Order Entered January 10, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  171003571

| | | |
|---|---|---|
| FURRUKH MUNAWAR & AAIYSHA MUNAWAR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TOLL BROTHERS INC., TOLL PA, II, L.P., TOLL PA GP CORP. AND TOLL BROS, INC.,TOLL ARCHITECTURE, INC., TOLL ARCHITECTURE I, P.A. | : | No. 186 EDA 2022 |
| | : | |
| | : | |
| v. | : | |
| | : | |

J-A28031-22

|  | : |  |
| --- | --- | --- |
| ANDERSEN WINDOWS, INC., MACK-DONOHOE CONTRACTORS, INC., MILLENNIUM CONTRACTING CORPORATION | : : : : | |
| | : | |
| | : | |
| APPEAL OF: TOLL BROTHERS, INC., TOLL PA II, L.P., TOLL PA GP CORP. AND TOLL BROS., INC. | : : : | |

Appeal from the Order Dated January 10, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 171003571

BEFORE: PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED SEPTEMBER 6, 2023**

Toll Brothers, Inc., Toll PA II, L.P., Toll PA GP Corp., and Toll Bros., Inc. (collectively, "Toll") and Mary P. Hansen ("Attorney Hansen") (collectively, "Appellants") appeal from the discovery order that denied their motions to quash a subpoena for Attorney Hansen to appear at a deposition and produce documents to Furrukh Munawar and Aaiysha Munawar ("Appellees"). We affirm in part, vacate in part, and remand this matter to the trial court.

Toll is a publicly-traded company that constructs, markets, and sells residential homes. Numerous owners of Toll's houses have sued Toll for defective construction and alleging that their homes suffered water damage ("water infiltration claims").

- 2 -

In 2015 and 2016, Toll filed with the United States Securities and Exchange Commission ("SEC") public 10-K reports[1] that stated Toll's increases in its financial reserves ("reserves") for repairs. The reported increases apparently prompted the SEC to inquire with Toll about its reserves ("the SEC inquiry"). Specifically, in 2016, the SEC's Division of Corporate Finance sent a letter to Toll that requested explanations for: its reported reserves in 2014 and 2015; the accounting of possible recoveries from outside insurance carriers; and Toll's assertion that the claims against it were not material to its financial condition. *See* Letter from Toll to SEC, 5/17/16, at 2-4. Toll responded to that letter. In 2017, the SEC's Division of Enforcement issued a letter advising Toll that it was conducting an informal investigation based on Toll's 2016 10-K and 10-Q reports and requesting that Toll voluntarily provide additional information about the bases and timing of its decisions to report additional repair costs and expected insurance recoveries. *See* R.R. at 992-94a (Letter from SEC to Toll, 4/25/17).[2] The SEC's 2017 letter stated: "This

_____

[1] The SEC requires most publicly traded companies to file annual (10-K) and quarterly (10-Q) reports which provide snapshots of a company's business, the risks it faces, and its operating and financial results. *See* SEC Investor Alerts and Bulletins, "How to Read a 10-K/10-Q," 1/25/21 (available at https://www.sec.gov/oiea/investor-alerts-and-bulletins/how-read-10-k10-q).

[2] A copy of the 2017 SEC letter does not appear in the certified record. However, Appellees attached the 2017 SEC letter to a supplemental brief they presumably submitted to the trial court. The supplemental brief also does not appear in the certified record. However, both the supplemental brief and the attachments are included in Appellants' reproduced record. The attachments
*(Footnote Continued Next Page)*

investigation is a non-public, fact-finding inquiry. The investigation does not mean that we have concluded that you or anyone else has violated the law." *Id*. at 994a. At some point during the SEC inquiry, Toll retained Attorney Hansen as outside counsel to respond to the SEC. After at least one exchange of documents between Toll and the SEC, the SEC took no further enforcement action.

Appellees own a house constructed by Toll, and in 2017, they sued Toll alleging water infiltration claims. Toll, Appellees, and other plaintiffs suing Toll have since engaged in lengthy and contentious discovery proceedings, during which Appellees requested from Toll the documents it used to respond to the SEC inquiry. Toll refused to identify or disclose those documents.

The trial court issued two previous discovery orders concerning the documents. First, in January 2021, the trial court ordered Toll to produce "those records disclosed to the SEC that [were] not subject to a confidentiality agreement with the [SEC]" or to provide "a detailed log identifying the documents that they believe are protected and stating the reasons why." Order, 1/14/21, at ¶ D ("the January 2021 order"). Second, in July 2021, the trial court directed Toll to "produce to [Appellees] the confidentiality

---

to the supplemental brief contain four letters concerning the SEC's inquiry into Toll's reported reserves in 2014 and 2015, one only of which was included in the certified record. The 2017 SEC letter included in the attachments concern an additional increase in Toll's reserves reported in 2016. Appellees have not objected to the accuracy of the reproduced record. *See* ***WMI Grp., Inc. v. Fox***, 109 A.3d 740, 744 n.5 (Pa. Super. 2015) (noting that this Court may consider documents not included in the record but which are in the reproduced record where neither party disputes the accuracy of the documents)

agreement entered into between [Toll and the SEC] relating to the documents, records, and disclosures . . . to the SEC[,]" and "a detailed privilege log of all documents, records, and disclosures Toll . . . provided, produced, or otherwise made to the SEC." **See** Order, 7/15/21, at ¶¶ 3-4 (underline in original) ("the July 2021 order").[3]

Toll then produced Attorney Hansen's affidavit asserting that Toll retained her to respond to the SEC inquiry into the estimated repair costs for fiscal year 2016. **See** Attorney Hansen's Affidavit, 7/29/21, at 1. Attorney Hansen averred that she explained to the SEC that Toll's legal department was actively involved in decisions related to the accrual of water infiltration claims and that the response included confidential matters involving the attorney-client privilege, work-product protection, and trade secrets. **See id**. Attorney Hansen claimed she and Toll disclosed the documents to the SEC subject to an oral confidentiality agreement with the SEC. **See id**. Attorney Hansen added that "the very selection and compilation of the documents reflect[ed her] mental impressions in identifying what [she] believed to be responsive and relevant to the SEC inquiry." **Id**. at 1-2. She concluded that Toll expressly and repeatedly preserved all privileges related to the documents and the SEC confirmed that Toll's documents and disclosures during the inquiry would not waive any privilege. **See id**. at 2. Neither Toll nor Attorney

---

[3] The trial court entered the July 15, 2021 order under the caption **Adams v. Toll**, and Toll appealed a separate provision of that order. **See Adams v. Toll Bros., Inc.**, 283 A.3d 406 (Pa. Super. 2022) (unpublished memorandum).

Hansen, however, provided a privilege log identifying a specific document or the alleged privilege applicable to a specific document.

Appellees, in turn, subpoenaed Attorney Hansen to appear at a deposition and requested that she bring with her documents related to the SEC inquiry and her assertion of a confidentiality agreement between Toll and the SEC.[4] Appellants separately moved to quash the subpoena and requested a protective order. On January 10, 2022, the trial court entered the third order in this matter ("the January 2022 order") and denied Appellants' motions.[5] The order stated:

1. [Attorney] Hansen will appear for her subpoenaed deposition within fifteen (15) days from the date of the entry of this Order. . . ..

2. [Attorney] Hansen will produce the documents provided in response to a 2016 SEC inquiry into [Toll's] disclosure of estimated repair costs for fiscal year 2016, by no later than the time of her subpoenaed deposition.

Order, 1/10/22 ("the January 2022 order").

_____

[4] Appellees attached to their subpoena of Attorney Hansen a schedule identifying the information and documents they sought. *See* Subpoena of Attorney Hansen, Schedule A and Instructions, 8/13/21. Appellees included a provision for Attorney Hansen to provide a privilege log to support assertions that documents were privileged.

[5] Although the trial court issued the order on January 4, 2022, the docketing of service of the order did not occur until January 10, 2022.

Appellants sought reconsideration of the January 2022 order and then filed separate timely appeals.[6] The trial court did not order Pa.R.A.P. 1925(b) statements but filed separate, but substantially similar, opinions concluding that Appellants' disclosure of documents during the SEC inquiry waived any privilege or evidentiary protection. **See** Trial Court Opinion, 186 EDA 2022, 6/24/22, at 5, 13-15 (cited hereinafter as "Trial Court Opinion").[7]

Appellants raise the following issues for our review:

1. Did the trial court err by ordering the production of documents that are immune from discovery because they are privileged, subject to work product protection, and confidential under the Pennsylvania Rules of Professional Conduct, and where those

_____

[6] **See generally Green v. Trustee of University of Pennsylvania**, 265 A.3d 703, 707 n.4 (Pa. Super. 2021) (discussing Pa.R.A.P. 1701(b)(3) and noting that a motion for reconsideration does not toll the time to take an appeal unless the trial court express grants reconsideration and vacates the appealed order). The trial court subsequently denied reconsideration, including Appellants' claim that the SEC's denial of Appellees' request for the documents pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.A. § 552, supported their claim that the SEC treated Toll's documents as confidential.

[7] This Court issued a rule to show cause why these appeals should not be quashed because the trial court's order did not expressly require disclosure of Toll's documents. Appellants answered asserting that the collateral order doctrine applied to the denial of its claims that the documents constituted work product. This Court discharged the rule to show cause. In their brief, Appellants note that the trial court's opinion later clarified that the court intended to compel disclosure of the documents that Appellants sent to the SEC. **See** Appellants' Brief at 4; **see also** Trial Court Opinion, 6/24/22, at 4, n.1. The trial court's opinion also clarified that it directed the January 2022 order to Toll. **See** Trial Court Opinion, 6/24/22, at 4, n.1. This Court subsequently granted Appellants' application to consolidate the appeals. Appellants have filed a joint brief in this appeal.

protections were not waived by disclosure to the SEC pursuant to a confidentiality agreement?

2. Did the trial court err by ordering the production of privileged, work product protected, and confidential documents from Toll's former counsel where any request for the production of such documents should have been directed to Toll directly because, among other reasons, Toll's former counsel is required by the Rules of Professional Conduct to preserve privilege and confidentiality and allowing discovery from a party's counsel risks interfering with the attorney-client relationship and an orderly adversarial process?

Appellants' Brief at 8.

Before addressing the merits of these appeals, we consider Appellants' invocation of this Court's jurisdiction pursuant to the collateral order doctrine set forth in Pa.R.A.P. 313. *See In re Estate of McAleer*, 248 A.3d 416, 424 (Pa. 2021).

A collateral order

is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

*Shearer v. Hafer*, 177 A.3d 850, 857 (Pa. 2018) (quoting Pa.R.A.P. 313; brackets in original). The appealing party must establish all three prongs of the collateral order rule for an appellate court to exercise jurisdiction. *See id*. at 857-58.

"[T]he collateral order doctrine is to be narrowly construed in order to buttress the final order doctrine, and by the recognition that a party may seek an interlocutory appeal by permission . . .." *See id*. at 858 (internal citations omitted). Narrow construction of the collateral order doctrine avoids

piecemeal determinations and the unnecessary protraction of litigation. *See Rae v. Pennsylvania Funeral Directors Ass'n*, 977 A.2d 1121, 1129 (Pa. 2009). A court must consider whether each distinct legal issue meets the requirements of Rule 313. *See id*. at 1130.

We conclude that we have jurisdiction pursuant to the collateral order doctrine. The issues related to the trial court's January 2022 order are separable from Appellees' water infiltration claims against Toll. Appellants' claimed right to confidentiality under the work-product doctrine implicates important rights. Postponement of a review of the trial court's conclusion that Appellants waived that right would result in an irreparable loss of the right. Accordingly, Appellants satisfied the three elements of the collateral order doctrine to invoke this Court's jurisdiction. *See McIlmail v. Archdiocese of Philadelphia*, 189 A.3d 1100, 1105 (Pa. Super. 2018).

Appellants, in their first issue, present two related arguments: (1) they established that the documents sent to the SEC constituted Attorney Hansen's work product and (2) the trial court erred when finding Toll waived any claims of privilege by disclosing the documents to the SEC.

We review the trial court's discovery order for an abuse of discretion. *See Carlino East Brandywine, L.P. v. Brandywine Villages Associates*, 260 A.3d 179, 195-96 (Pa. Super. 2021) (hereinafter, "*Carlino*"). The proper application of evidentiary privileges presents a question of law over which our standard and scope of review is *de novo* and plenary. *See BouSamra v. Excela Health*, 210 A.3d 967, 973 (Pa. 2019).

It is well settled that claims of privilege involve shifting burdens of production. ***See Carlino***, 260 A.3d at 197. Initially, the party claiming a privilege or protection bears the burden of producing facts to establish the proper invocation of a privilege or protection. ***See id***. If the party opposing disclosure fails to do so, our review will end. ***See id***. If the opposing party properly invokes a privilege or protection, the burden will then shift to the party seeking discovery to establish waiver of the privilege or protection or an exception that would permit disclosure. ***See id***.

We initially consider whether Appellants established that the documents at issue were Attorney Hansen's work product.[8]

The Pennsylvania Rules of Civil Procedure provide that the scope of discovery is broad and extends to unprivileged matters "relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . .." Pa.R.Civ.P. 4003.1. This includes "the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." ***Id***.

Rule 4003.3 defines work-product protection as follows:

_____

[8] Appellants correctly observe that the trial court did not specifically address their assertions that the work-product protection, or any other privilege, applied. Although the trial court did not consider whether the documents were Attorney Hansen's work product, we will address that question because it involves a question of law. ***See BouSamra***, 210 A.3d at 973.

> . . .a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. ***The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories***. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.Civ.P. 4003.3 (emphasis added). The comment to Rule 4003.3 states that the rule "is carefully drawn and means exactly what it says" and "immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more." ***See*** Pa.R.Civ.P 4003.3, Comment.

Appellants contend they properly established that work-product protection applied because Attorney Hansen's selection and compilation of documents when responding to the SEC inquiry reflected her mental processes and opinions as Toll's counsel. In support of this "compilation theory," Appellants principally rely on the United States Third Circuit Court of Appeals decision in ***Sporck v. Peil***, 759 F.2d 312 (3d Cir. 1985), which reasoned that an attorney's selection of documents reflect her mental impressions and opinions concerning litigation.[9]

_____

[9] In ***Sporck***, the plaintiff, Peil, sued defendants, including a company and the company's president, Sporck. ***See Sporck***, 759 F.2d at 313. The defendants produced massive amounts of documents during discovery. ***See id***. In preparing for Sporck's deposition, defense counsel selected a subset of the

*(Footnote Continued Next Page)*

Appellants' reliance on **Sporck** for a "compilation theory" of work-product protection is unavailing. It is well settled that federal appellate courts decisions do not bind a Pennsylvania court but may be persuasive. **See Carbis Walker, LLP v. Hill, Barth & King, LLC**, 930 A.2d 573, 581 & n.9, 583 & n.16 (Pa. Super. 2007). **Sporck** involved the application of the federal rules of civil procedure, not Pennsylvania law, and there are significant differences between the relevant federal and Pennsylvania rules, which diminish its persuasive value in this appeal.[10] Crucially, the facts and reasoning of **Sporck** are distinguishable from the present case. In **Sporck**, the defense **previously disclosed** all documents to the plaintiff, and the

_____

discovery documents. **See id**. At the deposition, counsel for Peil asked whether Sporck had reviewed any documents before his deposition, and after Sporck replied that he had, Peil's counsel requested the identification and production of the documents Sporck had reviewed. **See id**. at 313-14. Defense counsel refused the request. The Third Circuit ultimately agreed with the defense that the identification and production of the documents that defense counsel had compiled in preparation for the deposition would reveal defense counsel's mental impressions and opinions about the litigation and thus invade counsel's work product. **See id**. at 316.

[10] The **Sporck** Court, in relevant part, addressed Fed.R.Civ.P. 26(b) and the rule's interaction with Fed.R.E. 612, concerning the documents used to refresh a witness's memory. **See Sporck**, 759 F.2d at 317-18. Pennsylvania Rule 4003.3 differs from Federal Rule of Civil Procedure 26(b) on several salient points. **See** Pa.R.Civ.P. 4003.3, Comment (noting that, unlike federal Rule 26(b), Rule 4003.3 does not require a showing of substantial need and undue hardship to compel disclosure and does not place attorneys and party representatives on equal footing); **see also BouSamra**, 210 A.3d at 976 & n.6 (noting that Rule 4003.3 is broader than Federal Rule 26(b) because Rule 4003.3 applies to mental impressions and documents **not** prepared in anticipation of litigation). We note that no published decision by a Pennsylvania appellate court has cited **Sporck** or has adopted a "compilation theory" of work-product protection.

application of the "compilation theory" only prevented the plaintiff from gleaning defense counsel's opinion about which documents were most relevant to the ongoing litigation. *See Sporck*, 759 F.2d at 313-14, 316-17. Here, Toll has not disclosed any documents in the alleged compilation and has yet to even identify the nature of any document in a privilege log. Appellants seek a far broader application of the "compilation theory" than recognized in *Spork* in order to independently protect each document within the compilation as work product and to justify Toll's refusals to comply with two prior court orders to submit a privilege log to assess its claim privilege on a document-by-document basis.

Having reviewed *Sporck* and the record in this case, we conclude that Appellants have not established a factual or legal basis for a broad application of the "compilation theory." The fact that Attorney Hansen, as Toll's outside counsel at the time of SEC inquiry, exercised her professional judgment when she reviewed, selected, and compiled documents to respond to the SEC does not support the proposition that each individual document within her alleged compilation is protected as her work product. *Cf*. Pa.R.Civ.P. 4003.3, Comment (stating that the mere placement of documents in a lawyer's file does not protect documents otherwise subject to discovery). Thus, we

conclude that the "compilation theory" of work-product protection does not apply in this case.[11]

In their next argument, Appellants assert that their disclosures to the SEC did not result in the waiver of *any* claim of work-product protection because they maintained a reasonable belief that the SEC would treat their responses confidentially.

In *BouSamra*, our Supreme Court set forth the standards for considering the waiver of work-product protection. The Court initially noted that unlike the attorney-client privilege, which protects confidential communications between an attorney and her client, work-product protection affords an attorney freedom to form mental impressions and opinions about a matter without fear that her impressions and opinions will be used against her. *BouSamra*, 210 A.3d at 977-78, 982. The Court stated:

---

[11] Appellants also contend that if this Court rejects the "compilation theory" of work-product protection, this Court should remand to allow them to establish whether any given document in the compilation is protected or privileged. They assert that trial court did not afford them a proper opportunity to assert claims on a document-by-document basis.

We emphasize that Toll has yet to provide a privilege log concerning the document sent to the SEC despite having prior opportunities to comply with the trial court's January 2021 and July 2021 orders. However, because the trial court did not find waiver on this basis, we will not do so independently. *Cf. Carlino*, 260 A.3d at 199 (concluding that waiver based on the failure to submit a privilege log was inappropriate when the procedural posture of that case was such that the trial court had to determine whether the requesting party was entitled to privileged documents because the opposing party waived their claim of privilege).

As is clear from the text of [Rule 4003.3] as well as the jurisprudence surrounding the work product doctrine, confidentiality is not a cornerstone of the accompanying privilege. . . . Accordingly, because the purposes of the attorney-client privilege and the work product doctrine are different, the waiver analysis for each rule necessarily diverges as well.

Whereas disclosure to a third party generally waives the attorney-client privilege, the same cannot be said for application of the work product doctrine because disclosure does not always undermine its purpose.

*Id*. at 976-78 (internal citations, quotations, brackets and footnotes omitted).

The **BouSamra** Court articulated the following test for waiver of work-product protection based on the purposes of the doctrine:

[W]e hold that the work product doctrine is waived when the work product is **shared with an adversary**, or **disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it**. . . .

. . . We recognize that a fact intensive analysis is required to determine whether [a disclosure of a document to a third-party] significantly increased the likelihood that an adversary or potential adversary would obtain it. Courts tasked with analyzing similar factual situations generally consider whether the disclosure was inconsistent with the maintenance of secrecy from the disclosing party's adversary. In evaluating the maintenance of secrecy standard, a lower court should consider **whether a reasonable basis exists for the disclosing party to believe that the recipient would keep the disclosed material confidential**.

The level of confidentiality, however, should not be conflated with the heightened level of confidentiality required under the attorney-client privilege. Indeed, while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege. . . .

There are some cases that suggest that any disclosure of a document to a third person waives the work-product immunity to which it would otherwise be entitled. Decisions to this effect confuse the work-product immunity with the attorney-client privilege. The attorney-client privilege has

- 15 -

> its basis in the confidential nature of the communication and the reason for the privilege ordinarily ceases to exist if confidentiality is destroyed by voluntary disclosure to a third person.  But the purpose of the work-product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials.
>
> Attorney work product need be kept confidential only from the adversary.

*BouSamra*, 210 A.3d at 978-79 (internal citations, quotations, and brackets omitted) (emphases added).

Appellants contend that the trial court erred in its application of *BouSamra*'s maintenance of secrecy standard.  They claim the trial court failed to engage in a fact-specific inquiry to determine whether their disclosures to the SEC provided information to an adversary or significantly increased the likelihood that an adversary or potential adversary would obtain the documents or information.  They emphasize that the SEC was not an adversary because the SEC's request for information was part of an informal, non-public inquiry, rather than a formal investigation of wrongdoing. Furthermore, they assert that all circumstances surrounding their disclosures to the SEC established that they reasonably believed the documents would remain confidential and would not be disclosed to other potential adversaries. Toll argues: (1) it selectively disclosed the documents to the SEC to further a shared common purpose of ensuring Toll's compliance with its public disclosure requirements; (2) Attorney Hansen had reached an oral confidentiality agreement with the SEC; and (3) the denial of Appellees' FOIA

request bolsters Toll's belief that the SEC would keep the documents confidential.[12] Appellants also contend that compelling disclosure of documents which a company previously disclosed during an informal governmental inquiry would chill companies' willingness to cooperate with government inquiries.

The trial court, in finding that Toll's disclosure to the SEC constituted waiver, extensively discussed **Westinghouse Elec. Corp. v. Republic of Philippines**, 951 F.2d 1414 (3d Cir. 1991) ("**Westinghouse**"), which held,

---

[12] Appellants raise a host of legal arguments in support of their claim that the SEC was not an adversary and that they reasonably believed that their response to the SEC would remain confidential. **See** Appellants' Brief at 16 (citing United States District Court cases). For example, Appellants contend that Pennsylvania law recognizes selective waiver. **See id**. at 40 (citing **Commonwealth v. Sandusky**, 70 A.3d 886, 898-99 (Pa. Super. 2013) (upholding a trial court's protective order requiring defense counsel to disclose information to the trial judge and a supervising judge of a grand jury despite counsel's claim that the information was his work product); **Bagwell v. Pennsylvania Dep't of Educ.**, 103 A.3d 409, 419 (Pa. Cmwlth. 2014) (stating that "Pennsylvania courts recognize selective waiver in the context of work product"). Selective waiver is a broad label that includes issues, as in **Bagwell**, when a party partially discloses some, but not all, protected information concerning the same subject matter, or where, as here, a party selectively discloses work-product to a court or party without waiving its right to protect the information as to other parties. In addition to selective waiver, Appellants suggest the application the common-interest doctrine, which permits parties sharing a common legal interest in litigation to share work-product. **See In re Doe**, 662 F.2d 1073, 1081 (4th Cir. 1981) (noting the general rule that a disclosure to a person with an interest common to that of the attorney or the client will not constitute waiver of work-product protection). However, the cases cited by Appellants with respect to selective waiver are not binding or persuasive; alternatively, the relevance of the cases cannot be determined based on the factual record in this case. Therefore, we discern no basis to decide whether the SEC was or was not an adversary as a matter of law based on the legal authority cited by Appellants.

in part, that Westinghouse's voluntary disclosures of information to federal agencies investigating possible bribes resulted in the waiver of work-product protection.[13] The trial court concluded that similar to Westinghouse, Toll did not have a reasonable basis to believe that the documents it disclosed to the SEC would remain confidential because the SEC was Toll's adversary and Toll voluntarily disclosed documents during the SEC inquiry.

Following our review, we conclude that the record is insufficient to determine whether, as a matter of law, Toll waived all possible protections when it disclosed documents to the SEC. **Westinghouse**, like **Sporck**, is a Third Circuit Court of Appeals decision that is not binding on this Court. **See**

---

[13] In **Westinghouse**, Westinghouse contracted to build a power plant in the Philippines, after which the press reported allegations that Westinghouse had used a local representative to pay bribes. **See Westinghouse**, 951 F.2d at 1418. The SEC commenced an investigation into possible violations of United States securities law. **See id**. Westinghouse hired outside counsel to conduct an internal investigation, which resulted in the preparation of two reports. **See id**. Westinghouse showed one report to SEC investigators and shared the findings of the internal investigation. **See id**. Although the SEC subsequently discontinued its investigation, the United States Department of Justice ("DOJ") opened a separate investigation into Westinghouse and Westinghouse entered into a confidentiality agreement with the DOJ to disclose the reports of the internal investigations and other documents. **See id**. at 1419. The **Westinghouse** Court concluded that Westinghouse waived any work-product protection in the documents and information disclosed to the government agencies. The Court reasoned that the SEC and the DOJ were adversaries, refused to apply selective governmental disclosure because it would not further the purposes of work-product protection, and found that the governmental agencies did not agree to keep the documents confidential and that even had an agreement been in place, the disclosures to the two adversarial government agencies evidenced Westinghouse's disregard for secrecy and the possibility of disclosure to other parties. **See id**. at 1428-31.

*Carbis Walker*, 930 A.2d at 581 & n.9, 583 & n.16.  Moreover, our review of

*BouSamra* and *Westinghouse* constrains us to conclude that

*Westinghouse* is not dispositive of the question of waiver, particularly as it

relates to possible work-product protections contained in Toll's documents.

*BouSamra* dictates a fact-intensive inquiry.  *See BouSamra*, 210 A.3d at

978-79.  Although *Westinghouse* applied a similar standard, the present

appeal presents us with critical differences and gaps in the record.[14]  Here,

unlike *Westinghouse*, the record does not establish that the SEC inquiry of

Toll escalated to a formal investigation of wrongdoing by Toll.[15]  Toll has set

forth colorable, albeit generalized claims that it and the SEC were not

adversaries; however, aside from five letters memorializing SEC inquires and

_____

[14] The *Westinghouse* Court, at times, also suggested a possible equivalency of the waiver of the attorney-client privilege and work-product protection. *See Westinghouse* 951 F.2d at 1429  (noting that the standards for waiving work-product protection "should be no more stringent" than the waiver of the attorney-client privilege"), 1430 (noting that the Court's discussion of partial and selective disclosures as to the attorney-client privilege applied equally to in the context of work-product protection).  As noted above, our Supreme Court has cautioned against conflating the standards for waiving work-product protection and the attorney-client privilege.  *See BouSamra*, 210 A.3d at 978-79.

[15] We note that the SEC may issue a formal order of investigation for its staff to use compulsory process to investigate the likelihood that a violation of securities law occurred.  *See* Treatise on the Law of Securities Regulation, 6 Law Sec. Reg. § 16:23 (noting that the SEC may authorize a formal investigation when it believes that there is a likelihood of a violation and that the SEC's issuance of a formal order of investigation gives SEC staff subpoena powers).  The present record does not establish whether the SEC's Division of Enforcement issued its fact-finding request to Toll based on a likelihood of wrongdoing or whether a formal order of investigation had issued.

Toll's responses in 2016 and 2017, only one of which is included in the certified record, there is little basis to determine the precise nature of the SEC's inquiry, or inquiries, the relationship between the 2016 and 2017 inquiries, or conclude, as a matter of law, that SEC was in fact Toll's adversary or would likely become an adversary. Moreover, there is no evidence concerning the specific terms of the confidentiality agreement referred to in Attorney Hansen's affidavit. Absent additional factual development and findings by the trial court on these issues, we cannot determine whether Toll's disclosures to the SEC should result in waiver as a matter of law.[16] Accordingly, we are constrained to vacate the trial court's order to the extent the court concluded that Appellants' disclosure of documents waived all evidentiary privileges or protections as to Appellees' request for the documents.

In their second and final issue, Appellants assert that Appellees improperly sought protected information through Attorney Hansen's deposition. Appellants further contend that the trial court erred in requiring her to produce documents related to the SEC inquiry, when the trial court should have ordered Toll to produce the documents.

As to Appellants' arguments that Appellees' request to depose Attorney Hansen was improper, we note that Appellants simply extend their claim that

---

[16] We acknowledge that the trial court attempted to resolve this issue as a matter of law based on the case law submitted to it by the parties. **See** Trial Court Opinion, 6/4/22, at 9-15. Because further development of the record is necessary, we offer no opinion on the trial court's legal reasoning in this regard or its conclusion that Toll's disclosures to the SEC should result in waiver of all evidentiary privileges.

Toll's responses to the SEC inquiry were confidential such that any questioning of Attorney Hansen would compel her to testify about confidential or protected materials and violate her professional responsibilities to Toll as its former counsel. As set forth above, Appellants have focused in this appeal on the "compilation theory" of Attorney Hansen's work product, which we conclude does not apply based on the circumstances giving rise to this appeal. Moreover, as noted above, further development of the record as to the nature of the SEC inquiry and the alleged oral confidentiality agreement between Toll and the SEC is required before deciding the issue of waiver.

Here, Toll proffered Attorney Hansen's averments as support for its claims of privilege, and we agree with Appellees that under the circumstances of this case, Appellants placed Attorney Hansen's understanding of the SEC inquiry and the facts related to the asserted confidentiality agreement squarely at issue in this discovery dispute. *Cf. Carlino*, 260 A.3d at 201-02, 204 (discussing waiver of privileges and protections by placing matters at issue and noting that "[t]he scope of waiver of privileged material must be determined by the extent to which the privileged material has been placed in issue"). Appellants cannot now refuse the deposition of Attorney Hansen or challenge the requirement that she testify and produce documents relevant to the nature of the SEC inquiry and their asserted beliefs that their disclosures to the SEC would remain confidential, including the terms of the asserted confidentiality agreement. Accordingly, we affirm the trial court's order to the

extent that it required the deposition of Attorney Hansen on these issues. *See* Order, 1/10/22, at ¶ 1.

Appellants also assert that Toll, not Attorney Hansen, should be compelled to produce documents at Attorney Hansen's deposition. However, our decision to vacate the trial court's ruling that Appellants waived any evidentiary privileges or protections renders this issue moot in this appeal.[17] *See id*. at ¶ 2.

In sum, we reject Appellants' reliance on the "compilation theory" as a basis for applying work-product protection and discern no error in the trial court's order compelling Attorney Hansen to appear for a deposition. However, we conclude that the record requires further development for the trial court to consider whether Toll waived all privileges or protections based on the record before it. Thus, we affirm the order in part and vacate in part and remand this matter for further proceedings.

We do not constrain the trial court's discretion to conduct the remaining discovery in an expeditious manner. To the extent Toll intends to raise additional claims of privileges or protections contained in any specific document, we leave it to the sound discretion of the trial court to determine the appropriate method and time to allow Toll to raise those claims, to decide the further issues that may be raised in those claims, and to determine on a fuller record, whether Toll's disclosures to the SEC constituted waiver.

---

[17] In any event, the trial court later clarified that it intended for Toll to disclose the documents. *See* Trial Court Opinion, 6/24/22, at 4, n.1.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/06/2023